IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO RAMIREZ, | No. C 06-1731 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| A. KANE, Warden, | |
| Respondent. | |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

On September 1, 1993, petitioner was sentenced to seven years to life in prison for attempted murder and assault with a deadly weapon (Exh. 1).[1] He had stabbed his former girlfriend eleven times, including once with such force that the knife went through her neck to the top of her spine and she choked on the knife blade (Exh. 4 (probation officer's report) at 2). He left, then returned and stabbed her again, puncturing a lung, then stabbed himself in the stomach (*ibid.*). He had ingested alcohol and sleeping pills, but it was the opinion of police at

---

[1] Citations to "Exh." are to the exhibits attached to respondent's answer.

the scene that he was not intoxicated and knew what he was doing – he gave a very clear account of events to them, although when interviewed by the probation department claimed not to remember most of them (*id.* at 2-3). On December 10, 2004, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole (Exh. 2 at 51-54). That decision is the subject of this habeas petition.

## DISCUSSION

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.     ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his due process rights were denied when the Board denied parole three times based on the circumstances of his crime; and (2) the Board's decision was arbitrary, capricious, and not supported by the evidence. As these are nearly the same claim, they will be considered together.

**1.      DUE PROCESS**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1. Respondent contends that petitioner does not have a liberty interest in parole, hence no right to due process regarding it, and that even if he does have a liberty interest, the only due process protections to which he is entitled are a right to be heard and a statement of reasons for denial – that is, that prisoner have no right that there be sufficient evidence to support a parole denial.

3

### a. LIBERTY INTEREST

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it uses mandatory language, may create a presumption that parole release will be granted when or unless certain designated findings are made, and thereby give rise to a constitutionally protected liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole statute providing that board "shall" release prisoner, subject to certain restrictions, creates due process liberty interest in release on parole). In such a case, a prisoner has liberty interest in parole that cannot be denied without adequate procedural due process protections. *See Allen*, 482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole. In California, the panel or board "shall set a release date unless it determines that the

4

1  gravity of the current convicted offense or offenses, or the timing and gravity of current or past
2  convicted offense or offenses, is such that consideration of the public safety requires a more
3  lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be
4  fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of
5  *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in
6  release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme
7  requires that parole release be granted unless the statutorily defined determination (that
8  considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16
9  (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence
10 implicated prisoner's liberty interest). In sum, the structure of California's parole scheme --
11 with its mandatory language and substantive predicates – gives rise to a federally protected
12 liberty interest in parole such that an inmate has a federal right to due process in parole
13 proceedings.
14 Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct.
15 92 (2005), as authority for his contention that the California statute does not create a liberty
16 interest in parole. This argument has been rejected by the United States Court of Appeals for
17 the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).
18 Respondent's argument as to liberty interest is without merit.
19       **b.**     **DUE-PROCESS PROTECTIONS**
20 Respondent contends that a prisoner's due process rights in connection with parole do
21 not include a right not to be denied parole without sufficient evidence to support the denial.
22 The Supreme Court has clearly established that a parole board's decision deprives a
23 prisoner of due process if the board's decision is not supported by "some evidence in the
24 record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying
25 "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*,
26 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the
27 Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904;
28 *Biggs*, 334 F.3d at 915. The "some evidence" standard identified in *Hill* is clearly established

5

federal law in the parole context for purposes of § 2254(d).  *See Sass*, 461 F.3d at 1128-1129.

Respondent's argument is without merit.

### 2. MERITS

Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.  Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128.  The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary."  *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses.  In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time.  *Biggs*, 334 F.3d at 916-917.  The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation."  *Id.*  Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest."  *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed."  *Sass*, 461 F.3d at 1129.  *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses.  *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some

1. evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument
2. in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current
3. threat to the public safety.
4.     In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded
5. that relief for Irons was precluded by *Sass*. *See Irons*, 470 F.3d at 664. The Ninth Circuit
6. explained that all of the cases in which it previously held that denying parole based solely on
7. the commitment offense comported with due process were ones in which the prisoner had not
8. yet served the minimum years required by the sentence. *Id.* at 665. Also, noting that the parole
9. board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's
10. rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in
11. some cases, indefinite detention based solely on an inmate's commitment offense, regardless of
12. the extent of his rehabilitation, will at some point violate due process, given the liberty interest
13. in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917).
14.     The Board, in denying parole, relied not only on the commitment offense – finding that
15. it was cruel and callous, that the victim was mutilated, and that the motive was trivial – but also
16. upon petitioner's escalating pattern of criminal behavior, his failure to profit from his previous
17. probation, his unstable social history of domestic violence, his need for more self-help
18. programs because of his habit of violence when drunk, and his need for a vocational program
19. (Exh. 2 at 52-54).
20.     At the time of the hearing petitioner had served eleven years on a seven-years-to-life
21. sentence. He thus was four years beyond the absolute minimum sentence he could have served.
22. The dictum in *Irons* thus would permit application of the *Biggs* dictum to petitioner – that is,
23. that the Board's "continued reliance . . . on an unchanging factor, the circumstance of the
24. offense and conduct prior to imprisonment . . . could result in a due process violation," *Biggs*,
25. 334 F.3d at 916-917. But even if it is assumed for purposes of this decision that the *Biggs*
26. dictum is correct, and even if the other factors relied upon for denial by the Board are
27. disregarded for the moment, this is not a case where reliance on the unchanging factor of the
28. offense would have violated due process. That is, the offense itself was "some evidence"

7

sufficient to support the denial. This is because petitioner was only four years beyond his earliest possible parole date and because the offense was indeed particularly cruel and vicious – petitioner stabbed someone he purported to love eleven times, among other things blocking her airway with the blade of his knife, left, then came back to stab her some more. Given the brutality of the offense and the relatively short time petitioner had been eligible for parole, the nature of the offense was "some evidence" just in itself that petitioner would be a danger to society if released on parole.

Not only was the nature of the offense sufficient in itself, but the Board also relied on other factors. They were not particularly strong, except for the Board's conclusion that petitioner requires additional substance abuse programing. As to that point, it is clear from the record that petitioner's violence was at least exacerbated by his use of alcohol, and of course it might be difficult for an alcoholic parolee to resist temptation; under these circumstances, the Board's conclusion that petitioner requires more time in self-help programs is also "some evidence" to support the result.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 25, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.06\RAMIREZ731.RUL.wpd

8